IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2012

## CHANDA LANGSTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-647     Cheryl Blackburn, Judge**

––––––––––––––––––––––––

**No. M2012-00841-CCA-R3-PC - Filed February 22, 2013**

––––––––––––––––––––––––

Petitioner, Chanda Langston, pleaded guilty without a recommended sentence to six counts of forgery and one count of theft of property valued at $60,000 or more.  The trial court imposed an effective sentence of twelve years in confinement.  Following an unsuccessful direct appeal, petitioner now claims that trial counsel rendered ineffective assistance of counsel at the sentencing hearing.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

James O. Martin, III (on appeal), and David S. Sadlow (at post-conviction hearing), Nashville, Tennessee, for the appellant, Chanda Langston.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James Milam and Bret Gunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

I.  Facts and Procedural History

A.  Facts from the Guilty Plea Proceeding

        Petitioner pleaded guilty in the Davidson County Criminal Court to six counts of forgery between $1,000 and $10,000, a Class D felony, and one count of theft of property valued at more than $60,000, a Class B felony.  *State v. Chanda Dawn Langston*, No.

M2009-02247-CCA-R3-CD, 2010 WL 3822829, at *1 (Tenn. Crim. App. Sept. 30, 2010). The terms of the plea provided that the trial court would determine petitioner's length of sentence and manner of service. *Id.* The trial court held a sentencing hearing, at which the following evidence was received:

> At the sentencing hearing, Barry Canter, the victim, testified that he was the owner and operator of Cooks Orthopedics and Putnam County Orthopedic Appliance Company. He said that he employed [petitioner] as a bookkeeper and that she worked at his businesses for over six years. He said he noticed unexplained money discrepancies and asked the [petitioner] if she knew the source of the problems. Mr. Canter said [petitioner] responded by stating that she did not know anything and that she did not think accountants or billing agents were responsible. Mr. Canter stated that after this conversation, his wife noticed a company check written to [petitioner] for $1,600. He said that he and his attorney confronted [petitioner] with the check and that she admitted forging it.

> Mr. Canter testified that he had evidence showing that [petitioner] forged 149 company checks, beginning in July 2004 and continuing until October 2008, for a total loss of $233,285.79. He said the indictment reflected only a portion of this loss, charging [petitioner] for forging fifty-five company checks, from January 2007 until October 2008, for a loss of about $106,000. Mr. Canter said [petitioner]'s actions forced him to borrow $200,000, secured by a second mortgage on his home, to keep his companies running. He said that he and his wife worked longer hours six days a week and earned reduced pay or no pay in an attempt to save the companies. He said that he was unable to pay employee commissions or bonuses. Mr. Canter stated that ordering [petitioner] to pay restitution would not help the financial health of his companies, as it would take [petitioner] more than thirty years to repay the amount taken.

> Metropolitan Nashville Police Detective Casey Stupka testified that she investigated the forgeries and theft. She stated that [petitioner] was authorized to write company checks for legitimate company purposes. She determined that [petitioner] made company checks payable to herself and recorded the missing money as payment to company vendors. Detective Stupka said that she obtained a subpoena for [petitioner]'s bank account records and that she examined how [petitioner] spent the money taken. She said [petitioner] spent the money on fast food, a 2006 Dodge Durango, gasoline, and consumer

goods. She stated [petitioner] appeared to be supporting multiple people with the money.

[Petitioner] acknowledged that she forged 149 company checks, that she took company money and placed it in her personal bank account, and that her actions caused Mr. Canter and his companies financial trouble. She said she knew her actions would be discovered, and she acknowledged there was no justification for her acts. She stated that she did not tell Mr. Canter the truth when he first asked about the missing money because he did not ask if she was the person who took the money and because he did not suspect her at that time.

[Petitioner] expressed remorse. [Petitioner] testified that she wanted to repay the money taken but doubted if she could ever repay the full amount. [Petitioner] stated that she would attempt to pay at least half of her salary as restitution if she received an alternative sentence but that she would likely be unable to pay more than $250 per month even if she were able to obtain a good job.

[Petitioner] testified that she supported up to fifteen people with the money taken from Mr. Canter, including friends and family. She stated that she spent some of the money on necessities. She admitted she spent hundreds of dollars on hotel rooms and more than $300 per month on cellular telephones for herself and her boyfriend.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114:

(1)    [petitioner] had a previous history of criminal behavior;

(6)    the amount of damage to property sustained by or taken from the victim was particularly great; and

(14)    [petitioner] abused a position of private trust.

*See* T.C.A. § 40-35-114 (Supp. 2009). The trial court found no mitigating factors applicable.

[Petitioner] was sentenced to four years' confinement for each of the six forgery convictions and twelve years' confinement for the theft conviction.

The sentences were imposed concurrently, for an effective sentence of twelve years' confinement. The trial court denied [petitioner]'s request for alternative sentencing, stating that confinement was necessary to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrence to others likely to commit similar offenses. . . .

*Id.* at *1-2.

On direct appeal, appellant contended that her effective sentence was excessive. She also challenged the trial court's denial of her request for alternative sentencing. *Id.* at *2. This court affirmed the judgments of the trial court. *Id.*

## B. Procedural History

Petitioner filed for post-conviction relief in July 2011. Following appointment of counsel by the post-conviction court, she filed an amended petition through counsel in October 2011. The amended petition challenged the voluntariness of her guilty plea and raised the issue of ineffective assistance of counsel at her sentencing hearing. The post-conviction court held an evidentiary hearing on February 12, 2012, at which petitioner and trial counsel testified.

## C. Facts from the Evidentiary Hearing

Petitioner testified that her fiancé retained trial counsel on her behalf. Trial counsel represented her at the guilty plea submission hearing, the sentencing hearing, and on appeal. Petitioner stated that she entered her guilty plea on advice of counsel. She further stated that she only met with him for ten to fifteen minutes on court dates. She explained that trial counsel gave her no guidance with respect to her other options aside from pleading guilty. He told her that she was going to have a sentencing hearing and that he had the paperwork prepared. Petitioner said that trial counsel explained the charges against her but nothing else. She stated that she did not receive discovery. She further testified that trial counsel did not explain any favorable treatment she might receive by pleading guilty instead of standing trial. Her understanding was that she would receive probation by pleading guilty. When she subsequently learned that she would have a sentencing hearing, she was "kind of confused and a little upset."

At the time of her plea, petitioner understood that she would plead guilty and have a sentencing hearing that would include a determination of whether the court would suspend her sentence and place her on probation. After she entered the guilty plea, trial counsel informed her that the minimum sentence she could receive was eight years and the maximum

was twelve years. Petitioner testified that based on what she understood to be the range of punishment, it "probably" would have affected her decision to plead guilty, and she would have elected to stand trial.

She stated that trial counsel did not prepare her for the sentencing hearing. She also recalled that trial counsel was frequently late for court appearances and failed to appear on occasion. Petitioner testified that she did not feel that she made an informed decision with regard to pleading guilty. She was pregnant at the time and was "emotionally distressed." She was suffering a high-risk pregnancy and was not receiving proper medical care. Petitioner believed that her physical condition impacted her ability to process and understand the circumstances of her case. Based on her physical state, petitioner did not believe that her guilty plea was freely and voluntarily entered.

Petitioner recalled that on the day of the sentencing hearing, trial counsel was approximately two and one-half hours late to court. She recalled that counsel's tardiness caused the trial judge to be late for another appointment. Petitioner sensed that the trial judge was "very upset" and that she received a harsher sentence because of trial counsel's tardiness. Trial counsel presented petitioner as the only witness at the sentencing hearing.

On cross-examination, petitioner acknowledged that she had testified at her bond hearing and admitted her guilt. She admitted that she knew she was guilty but said that she did not deserve a twelve-year sentence. She confirmed that her primary complaint was the length of her sentence.

The State reviewed the transcript of petitioner's guilty plea submission hearing with her during cross-examination. In the transcript, the trial court explained to petitioner that if she received a ten-year sentence, she would be eligible for probation, but if she were sentenced to a greater term, she would have to serve the sentence in the department of correction. At the plea submission hearing, the trial court clarified, "I guess the worst case scenario for you is that you could get a 12[-]year sentence and I could make you serve it in the [d]epartment of [c]orrection[ ]. Do you understand that's a possibility?" Petitioner responded affirmatively. She acknowledged that the transcript correctly reflected the colloquy. She also admitted that "regardless of what [trial counsel] did or didn't tell [her], the judge told [her] . . . in open court" that she might receive a twelve-year sentence to be served in prison. Petitioner stated that while trial counsel could not have presented any witnesses to testify that she was not guilty, he should have presented character witnesses at the sentencing hearing to demonstrate that she acted under extenuating circumstances.

Petitioner clarified that when she appeared in court to enter her guilty plea on July 9, 2009, she thought she "was coming in . . . to sign off on probation." Someone informed her

that her probation had "fell [sic] through," and she would have a sentencing hearing at a later time. She admitted that when she pleaded guilty, she knew that probation was not guaranteed. Petitioner stated that she felt rushed to give her testimony at the sentencing hearing.

The post-conviction court questioned petitioner about why she persisted in a guilty plea when she learned that she was not guaranteed probation. Petitioner stated that she was scared and that trial counsel told her it was in her best interest to plead guilty and have a sentencing hearing. Petitioner told the court that trial counsel should have called her fiancé as a witness but then admitted that he would have testified that she was supporting a drug habit for him and other people. Petitioner stated that she was unaware that the jury was not involved in sentencing. She thought that if her convictions and sentences were set aside, she could be sentenced by a jury.

Trial counsel testified that he represented petitioner from her bond hearing through the sentencing hearing. He stated that he met with petitioner's fiancé "no less than six or seven" times, sometimes on Sundays. Trial counsel worked toward securing a plea involving probation for petitioner but never guaranteed her that she would receive it. He communicated with the prosecutor several times, but they could not reach an agreement. The prosecutor informed trial counsel that the only way petitioner could receive any form of alternative sentencing was for her to enter a guilty plea without a recommended sentence. Trial counsel explained to petitioner that it was the only chance she had to get probation, or she would have to stand trial on every count of the indictment. He explained that if the jury convicted her, the trial court would determine whether the sentences would be served concurrently or consecutively, and she faced the potential of a lengthy sentence. Trial counsel testified that petitioner decided to enter a guilty plea and to submit the sentencing determination to the trial court because she did not have a criminal record and had formulated a restitution plan.

Trial counsel stated that he met with petitioner at court appearances. He noted that he never missed a court date and explained that petitioner may have thought he was not present because on discussion dates, inmates are not always brought up to the courtroom from the jail. He testified that he was late for petitioner's sentencing hearing because he was involved in a hearing in another courtroom. Trial counsel recounted telling petitioner that he did not need to call additional witnesses at the sentencing hearing because their testimony would have been cumulative and because they had shared in the proceeds of petitioner's crimes. In addition, he did not want to expose them to criminal liability. Although trial counsel's tardiness made the trial judge late for an appointment, trial counsel was aware that he could have asked to bifurcate the hearing and continue it at a later time. He stated that if it had been helpful to his client, he would have done so.

Following the hearing, the post-conviction court denied relief by written order dated April 8, 2012.

## II. Ineffective Assistance of Counsel

In her brief, petitioner stated, "Petitioner respectfully submits to this Honorable Court only the error of the [post-conviction] court in failing to grant a new sentencing hearing based on the ineffective assistance of counsel." As such, petitioner's challenge to the voluntariness of her guilty plea is abandoned and will not be addressed herein. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal").

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution

require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## B. Ineffective Assistance of Counsel at the Sentencing Hearing

Petitioner contends on appeal that trial counsel rendered ineffective assistance during the sentencing hearing by failing to meet with petitioner prior to the hearing, arriving late to the hearing, and failing to call any witnesses to testify on her behalf.

We first note that in the post-conviction court, petitioner raised the issue of trial counsel's failure to meet with her in the context of her challenge to the voluntariness of her guilty plea. Thus, the post-conviction court addressed this claim in the context in which it was framed in that court. In the context of the voluntariness of petitioner's guilty plea, the post-conviction court rejected this claim of error, stating:

> It is uncontroverted that Petitioner was given the opportunity to confer with [trial counsel] regarding her plea agreement. Petitioner testified at the evidentiary hearing that she entered the plea based on the advice of [trial counsel.] [Trial counsel] testified that he explained the circumstances surrounding Petitioner's plea – including the option to go to trial and face sentencing or enter a guilty plea and be sentenced by the Court after a sentencing hearing. . . . [Trial counsel] also explained that he advised Petitioner that her only chance for probation in her case was to enter a plea and hope the judge would sentence her to probation as she was eligible to be considered for alternative sentencing. The Court credits the testimony of [trial counsel.

Because the record supports the post-conviction court's findings of fact, we afford them the weight of a jury verdict. *Berry*, 366 S.W.3d at 169 (citing *Henley*, 960 S.W.2d at 578-79). Moreover, petitioner has failed to establish how she was prejudiced by trial counsel's failure to meet with her additional times. She is not entitled to relief on this claim.

Petitioner asserts that trial counsel's late arrival to her sentencing hearing inured to her prejudice.[1] In its order, the post-conviction court concluded:

---

[1] To be sure, petitioner does not claim that trial counsel's tardiness caused the trial court to sentence her more harshly. At the evidentiary hearing, the post-conviction court addressed petitioner's counsel, "[T]he implication seems to be that whatever irritation I might have with [trial counsel] being late, that I would take it out on his client as opposed to him. And I'm just wondering if that's a matter you want to pursue further in case you need to do that in front of another judge. . . ." Post-conviction counsel replied, "No. To the extent I inferred that, I apologize to Your Honor because I think Your Honor also indicated her willingness to continue the matter . . . ."

-9-

While the Court has a preference for the punctuality of attorneys who are scheduled to appear, tardiness, in and of itself, cannot rise to the level of ineffective assistance of counsel. Although [trial counsel] was more than two hours late to the hearing, the hearing was still able to take place[,] and there is no evidence that the hearing was rushed in order to meet the time constraints. Had additional testimony been requested, as [trial counsel] noted in his testimony, this Court would have bifurcated the proceeding as it has routinely done when needed. [Trial counsel's] tardiness was described in his testimony at the post-conviction hearing as resulting from the other hearing running abnormally long and his not being allowed to leave by the other court. This Court's afternoon docket on August 20, 2009, contained only two hearings – the first of which had already been completed. Thus, there was ample time for the proceeding[,] and the argument that the hearing was unnecessarily hurried due to her counsel's tardiness is not supported by the record. Petitioner has not demonstrated by clear and convincing evidence that the delay in her sentencing constituted ineffective assistance of counsel.

The record supports the post-conviction court's findings of fact. Moreover, petitioner has failed to demonstrate that she was prejudiced by trial counsel's late arrival to her sentencing hearing. She is not entitled to relief on this claim.

Finally, petitioner claims that trial counsel erred by failing to call additional witnesses to testify at her sentencing hearing. The post-conviction court noted that trial counsel "made the strategic decision not to call [other witnesses], stating that the witnesses would not only be cumulative in light of the evidence already in the record[,] but their testimony that they were individuals who spent the stolen funds would have subjected them to criminal and/or civil liability." The post-conviction court credited trial counsel's testimony. In addition, as the post-conviction court properly noted in its order denying relief, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

We agree with the post-conviction court's findings. Trial counsel explained that he had a legitimate reason for not calling additional witnesses. This court has held the failure to call specific witnesses to be a "legitimate trial tactic" in some cases. *Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). In addition, petitioner has not demonstrated that she was prejudiced by trial counsel's failure to call other witnesses. "[She] did not present the testimony of any uncalled witnesses or otherwise present any evidence that would have made a difference if presented. . . ." *Id.* We deny petitioner relief on this claim.

## CONCLUSION

After a thorough review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE